

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **15 CR 620** |
| | ) | No. |
| | ) | **JUDGE CHANG** |
| v. | ) | **MAGISTRATE JUDGE COX** |
| | ) | Violations: 18 U.S.C. §§ 371, 666, |
| | ) | 1341, 1343, and 1346 |
| BARBARA BYRD-BENNETT, | ) | |
| GARY SOLOMON, | ) | |
| THOMAS VRANAS, | ) | **INDICTMENT** |
| THE SUPES ACADEMY, LLC, and | ) | |
| SYNESI ASSOCIATES, LLC | ) | |

**COUNT ONE**

**FILED**

The SPECIAL JANUARY 2015 GRAND JURY charges:

OCT – 8 2015

1.    At times material to this indictment:

**THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT**

**Relevant Entities and Individuals**

    a.    The Chicago Public Schools (CPS), District Number 299, was an independent school district and unit of local government governed by the Board of Education of the City of Chicago, also known as the CBOE. The CBOE established the policies, standards, goals and initiatives for CPS. CPS received in excess of $10,000 in federal funding for each calendar year 2012, 2013, and 2014.

    b.    Defendant BARBARA BYRD-BENNETT was employed as a consultant with CPS from approximately May 1, 2012 until October 12, 2012, when she became the Chief Executive Officer and General Superintendent of CPS. BYRD-BENNETT was an agent of CPS during the entirety of her employment with

CPS. BYRD-BENNETT, in her employment with CPS, owed a duty of honest services to CPS and the CBOE in the performance of her public duties.

c. Defendants GARY SOLOMON and THOMAS VRANAS owned and operated defendants THE SUPES ACADEMY, LLC, and SYNESI ASSOCIATES, LLC (collectively, "the SUPES Entities"), which offered education-related services to the public education industry. SOLOMON was the Chief Executive Officer and VRANAS was the president of the SUPES Entities.

d. Defendant THE SUPES ACADEMY offered professional development training for school administrators.

e. Defendant SYNESI ASSOCIATES offered education consulting services and school diagnostic review and turnaround programs.

f. From approximately the summer of 2011 until approximately April 30, 2012, defendant BARBARA BYRD-BENNETT was a paid consultant for the SUPES Entities. BYRD-BENNETT served as a master teacher for defendant THE SUPES ACADEMY. BYRD-BENNETT also developed school diagnostic review and turnaround materials, called the Synesi School Turnaround Toolkit, for defendant SYNESI ASSOCIATES.

**Rules Regarding CPS Employees' Economic and Financial Interests**

*CPS Code of Ethics*

g. The CPS Code of Ethics was incorporated into defendant BARBARA BYRD-BENNETT's employment contracts with the CBOE, and BYRD-BENNETT agreed to be bound by the Code of Ethics.

h.    Pursuant to the Code of Ethics, defendant BARBARA BYRD-BENNETT was prohibited from having an economic interest in contracts with the CBOE, regardless of expense, price, or consideration. An economic interest included (i) an ownership interest under which she currently received or was entitled to receive more than $2,500 per year, and (ii) any interest with a cost or present value of $5,000 or more.

i.    Pursuant to the Code of Ethics, defendant BARBARA BYRD-BENNETT was prohibited from exercising Contract Management Authority in connection with (i) CBOE business with an entity in which she had an economic interest; (ii) CBOE business with a person or entity with whom she had an employment relationship; or (iii) CBOE business with a person or entity with whom she had a business relationship. The Code of Ethics defined "Contract Management Authority" as "personal involvement in or direct supervisory responsibility for the formulation or execution of a contract."

j.    The Code of Ethics prohibited defendant BARBARA BYRD-BENNETT from participating in any aspect of any contract award process in which she had or had reason to know that she had an economic interest distinguishable from that of the general public.

*Statement of Business and Financial Interests*

k.    As part of her employment with CPS, defendant BARBARA BYRD-BENNETT was required to file a Statement of Business and Financial

3

Interests annually. In her Statement of Business and Financial Interests, BYRD-BENNETT was required to disclose, among other things:

      i.     Any gifts or honoria, singly or in aggregate, valued in excess of $500 from any person or entity other than a relative;

      ii.     Any income through self-employment and/or employment as a full or part-time employee of any individual, organization, and/or corporation, unit, or government or other school system while also employed by the CBOE;

      iii.     Any individual or entity to whom the CBOE awarded work, business or contracts in which she or a relative had an economic interest and the amount of compensation that she received from that individual or organization.

      iv.     Any fee, good, gift, entertainment or any other thing of value that she received with or without the CBOE's approval that exceeded $50 in value from any organization or individual that was soliciting work or business with the CBOE or that had done work for the CBOE; the identity of the individual or organization that provided the fee, good, gift, entertainment or any other thing; a short description; and the approximate value.

### The Chicago Executive Leadership Academy

1.     In or about December 2011, defendants GARY SOLOMON, THOMAS VRANAS, and THE SUPES ACADEMY entered into a contract with Organization A to provide a leadership development program for CPS network chiefs, which program became known as the Chicago Executive Leadership Academy, or CELA. From approximately December 2011 until approximately July

2012, CELA was funded by a grant of approximately $380,000 from Organization A and approximately $25,000 from CPS.

      m.    In approximately the summer and fall of 2012, Organization A notified CPS personnel, including defendant BARBARA BYRD-BENNETT, that it would not provide further funding for CELA.

      n.    On or about October 24, 2012, the CBOE approved a $2.09 million sole-source contract with defendant THE SUPES ACADEMY to provide leadership development services for CELA.

      o.    On or about January 23, 2013, the CBOE approved (1) a $225,000 settlement payment to defendant THE SUPES ACADEMY for work purportedly performed by THE SUPES ACADEMY prior to the October 24, 2012 sole-source contract, and (2) a $225,000 contract extension of services for the October 24, 2012 contract.

      p.    On or about June 26, 2013, the CBOE approved a $20.5 million sole-source contract to defendant THE SUPES ACADEMY for leadership development services for CELA.

## The Scheme to Defraud

    2.    Beginning no later than in or about April 2012, and continuing until at least April 2015, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BARBARA BYRD-BENNETT,
GARY SOLOMON,
THOMAS VRANAS,
THE SUPES ACADEMY, and

SYNESI ASSOCIATES,

defendants herein, together with others known and unknown to the grand jury, knowingly devised, intended to devise, and participated in a scheme to defraud and to obtain money and property from CPS by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, and to defraud and deprive CPS and the CBOE of their right to the honest services of BYRD-BENNETT through bribery and kickbacks.

3.     It was part of the scheme that defendant BARBARA BYRD-BENNETT solicited and agreed to accept bribes and kickbacks in the form of personal benefits from and future employment with defendants GARY SOLOMON, THOMAS VRANAS, and the SUPES Entities, in exchange for acts in BYRD-BENNETT's official CPS capacity that were designed to promote and bring about the awarding of CPS contracts to the SUPES Entities.

4.     It was further part of the scheme that on or about April 29, 2012, defendant GARY SOLOMON sent defendant BARBARA BYRD-BENNETT an email in which SOLOMON stated, in part, "When this stint at CPS is done and you are ready to re re re retire, we have your spot waiting for you. Hopefully, with even more work and more opt. In the meantime, if we can figure a way to do deep principal PD at CPS, I can find a good home for [friends of BYRD-BENNETT's] and others, and make sure principles in CPS get kick ass training with kick ass teacher and kick ass coaching."

5.     It was further part of the scheme that defendants BARBARA BYRD-BENNETT, GARY SOLOMON, THOMAS VRANAS, and the SUPES Entities executed a Consulting Agreement in April and May of 2012 in which SOLOMON, VRANAS, and the SUPES Entities offered and agreed to give BYRD-BENNETT a percentage of the gross revenues of any contract awarded to the SUPES Entities if, among other things, BYRD-BENNETT provided sales services for the contract.

6.     It was further part of the scheme that defendants BARBARA BYRD-BENNETT, GARY SOLOMON, THOMAS VRANAS, and the SUPES Entities concealed the Consulting Agreement and BYRD-BENNETT's continued financial interest in the SUPES Entities from CPS and the CBOE, including by creating a letter, addressed to BYRD-BENNETT, that falsely purported to terminate her Consulting Agreement with THE SUPES ACADEMY effective April 30, 2012.

7.     It was further part of the scheme that on or about June 15, 2012, defendant BARBARA BYRD-BENNETT sent defendant GARY SOLOMON an email, with a copy sent to defendant THOMAS VRANAS, containing an email chain with a discussion of an expansion of CELA and stating, in part, "I will work hard to get us this and expanded work."

8.     It was further part of the scheme that defendant BARBARA BYRD-BENNETT performed acts in her official CPS capacity in order to promote and bring about the awarding of CPS contracts to the SUPES Entities, including:

a.     Introducing SYNESI EMPLOYEE A to CPS Chief A via email to plan for an external school diagnostic review of a CPS school by defendant SYNESI

ASSOCIATES and by falsely representing to CPS Chief A that she was receiving no financial benefit from the use of the diagnostic review;

b. Introducing SYNESI EMPLOYEE A to CPS Chief B via email to plan for an external school diagnostic review of a CPS school by defendant SYNESI ASSOCIATES and by falsely representing to CPS Chief B that she was receiving no financial benefit from the use of the diagnostic review;

c. Providing information to defendants GARY SOLOMON and THOMAS VRANAS regarding Requests for Proposals to be issued by the CBOE in an effort to give the SUPES Entities an advantage over their competitors;

d. Persuading Vendor A, which operated alternative schools within CPS, to serve as a sponsor for THE SUPES ACADEMY in August 2012;

e. Requesting funding from Organization A, via letters, emails, and in-person meetings in the summer and fall of 2012 and the spring of 2013, for expansions of CELA, which were to be conducted by defendant THE SUPES ACADEMY;

f. Requesting the assistance of Official A to solicit funding from Organization A for an expansion of CELA, to be conducted by defendant THE SUPES ACADEMY;

g. Falsely representing to CPS employees, via an email sent on or about September 13, 2012, that she formally resigned from her prior relationship with defendant THE SUPES ACADEMY before accepting her current position with

8

CPS and that she received no financial benefit from the continued work of defendant THE SUPES ACADEMY with CPS.

  h. Directing CPS Employee A to locate funding within CPS's budget to pay for an expansion of CELA for the 2012-2013 school year and to obtain the approval of CPS's procurement department for a sole-source contract for defendant THE SUPES ACADEMY for the expansion of CELA;

  i. Directing CPS employees to locate an additional $450,000 to pay THE SUPES ACADEMY for work purportedly performed by THE SUPES ACADEMY prior to the October 24, 2012 contract with CPS.

  j. Directing CPS Employee B to use defendant BARBARA BYRD-BENNETT's name and to identify her as leading the procurement process for the CELA contract for the 2012-2013 school year in order to facilitate the procurement process for defendant THE SUPES ACADEMY at CPS;

  k. Directing various CPS employees to obtain necessary approvals within CPS for sole-source contracts with defendant THE SUPES ACADEMY in 2012 and 2013 in order to ensure selection of THE SUPES ACADEMY for leadership development contracts with CPS; and

  l. Recommending to members of the CBOE that they approve contracts with defendant THE SUPES ACADEMY and funding for CELA in 2012 and 2013.

  9. It was further part of the scheme that defendants GARY SOLOMON, THOMAS VRANAS, and the SUPES Entities offered and agreed to create financial

accounts for the benefit of Relative A and Relative B of defendant BARBARA BYRD-BENNETT and to fund the accounts with payments to BYRD-BENNETT, pursuant to the concealed Consulting Agreement, for her official actions at CPS leading to the award of CPS contracts to the SUPES Entities.

10.     It was further part of the scheme that on or about July 2, 2012, defendant GARY SOLOMON sent defendant BARBARA BYRD-BENNETT an email that contained an email chain, including an email from THOMAS VRANAS regarding an RFP from CPS for Solicitation for School Quality Standards and Review Services, in which SOLMON responded "Yes.  No doubt.  [Relative A and Relative B] need a college fund...." to BYRD-BENNETT's question, "We are applying yes?"

11.     It was further part of the scheme that defendants GARY SOLOMON, THOMAS VRANAS, and the SUPES Entities agreed to hold the payments to defendant BARBARA BYRD-BENNETT for her official actions leading to CPS contracts for the SUPES Entities and pursuant to the concealed Consulting Agreement until after her employment with CPS ended, and to disguise these payments as a "signing bonus" upon her return to employment with the SUPES Entities.

12.     It was further part of the scheme that on or about December 2, 2012, defendant BARBARA BYRD-BENNETT sent defendant GARY SOLOMON an email that contained the personal identifying information for Relative A and Relative B and stated, "With the totals you shared, I would like for the accounts to be equal.  I

10

would like the flexibility to use funds for whatever reason as needed for them. . . .I know we calculated PG and St. Louis....what is it for Chicago, assuming we hit the full amount? And finally, this would be the same for Synesi when I make it happen, yes? Let me know and let me know when . . .how soon you can get the accounts set up."

13.     It was further part of the scheme that on or about December 6, 2012, defendant GARY SOLOMON sent defendant THOMAS VRANAS an email containing an email discussion between defendant BARBARA BYRD-BENNETT, SOLOMON, and VRANAS in which SOLOMON informed BYRD-BENNETT, in part, "Like we have discussed, we have created accounts that, upon withdrawal, we will pay down the taxes and distribute. You can distribute to [Relative A and Relative B] as you deem appropriate. It is our assumption that the distribution will serve as a signing bonus upon your return to SUPES/Synesi. If you only join for the day, you will be the highest paid person on the planet for that day. Regardless, it will be paid out on day one."

14.     It was further part of the scheme that defendants GARY SOLOMON, THOMAS VRANAS, and the SUPES Entities represented to defendant BARBARA BYRD-BENNETT that the accounts for Relative A and Relative B contained approximately $127,000 each, which funds represented approximately 10% of the gross proceeds of the October 24, 2012 contract, in addition to funds previously owed to BYRD-BENNETT for work performed in other school districts.

11

15. It was further part of the scheme that defendant GARY SOLOMON offered to arrange employment for friends of defendant BARBARA BYRD-BENNETT with the SUPES Entities in exchange for additional contracts with CPS.

16. It was further part of the scheme that defendant GARY SOLOMON offered and agreed to reimburse defendant BARBARA BYRD-BENNETT for the costs associated with a holiday party hosted by BYRD-BENNETT for CPS personnel in December 2012.

17. It was further part of the scheme that defendants GARY SOLOMON, THOMAS VRANAS, and the SUPES Entities gave defendant BARBARA BYRD-BENNETT numerous items of value, such as basketball tickets, baseball tickets, meals, and other personal items in exchange for BYRD-BENNETT using her position with CPS to ensure that the SUPES Entities kept and expanded their contracts with CPS and obtained additional contracts with CPS in the future.

*Concealment and Misrepresentations*

18. It was further part of the scheme that in the Statement of Financial Interests that defendant BARBARA BYRD-BENNETT filed with the CBOE each year from 2012 through 2014, BYRD-BENNETT answered "no" to the following question: "[D]id the Chicago Board of Education award any work, business or contracts to any person or entity in which you or a relative have an economic interest?"

19. It was further part of the scheme that defendant GARY SOLOMON falsely represented in the October 24, 2012 contract between the CBOE and

defendant THE SUPES ACADEMY that "no officer, agent or employee of the Board is or shall be employed by [THE SUPES ACADEMY] or has or shall have a financial interest, directly, or indirectly, in this Agreement or in the compensation to be paid hereunder except as permitted in writing by the Board's Ethics Policy[.]"

20.    It was further part of the scheme that defendant THOMAS VRANAS falsely represented in the June 26, 2013 contract between the CBOE and defendant THE SUPES ACADEMY that "no officer, agent or employee of the Board is or shall be employed by [THE SUPES ACADEMY] or has or shall have a financial interest, directly, or indirectly, in this Agreement or in the compensation to be paid hereunder except as permitted in writing by the Board's Ethics Policy[.]"

21.    It was further part of the scheme that defendants BARBARA BYRD-BENNETT, GARY SOLOMON, THOMAS VRANAS, and the SUPES Entities concealed, misrepresented and hid, and caused to be concealed, misrepresented and hidden, the existence and purpose of the scheme, and acts done in furtherance of the scheme.

22.    On or about April 29, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

BARBARA BYRD-BENNETT,
GARY SOLOMON,
THE SUPES ACADEMY, LLC, and
SYNESI ASSOCIATES, LLC,

defendants, herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce, certain signs, signals and sounds, namely, an email from SOLOMON to

BYRD-BENNETT in which SOLOMON stated, in part, "When this stint at CPS is done and you are ready to re re re retire, we have your spot waiting for you. Hopefully, with even more work and more opt. In the meantime, if we can figure a way to do deep principal PD at CPS, I can find a good home for [friends of BYRD-BENNETT's] and others, and make sure principles in CPS get kick ass training with kick ass teacher and kick ass coaching."

In violation of Title 18, United States Code, Sections 1343 and 1346.

## COUNT TWO

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Paragraphs One through Twenty-One of Count One are incorporated here.

2.     On or about June 15, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

BARBARA BYRD-BENNETT and
GARY SOLOMON,
THOMAS VRANAS,
THE SUPES ACADEMY, LLC, and
SYNESI ASSOCIATES, LLC,

defendants, herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce, certain signs, signals and sounds, namely, an email from BYRD-BENNETT to SOLOMON, with a copy sent to VRANAS, containing an email chain with a discussion of an expansion of CELA and stating, in part, "I will work hard to get us this and expanded work."

In violation of Title 18, United States Code, Section 1343 and 1346.

15

## COUNT THREE

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Paragraphs One through Twenty-One of Count One are incorporated here.

2.     On or about July 2, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

BARBARA BYRD-BENNETT and<br>
GARY SOLOMON,<br>
THOMAS VRANAS,<br>
THE SUPES ACADEMY, LLC, and<br>
SYNESI ASSOCIATES, LLC,

defendants, herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce, certain signs, signals and sounds, namely, an email from SOLOMON to BYRD-BENNETT, containing an email chain that included an email from VRANAS regarding an RFP from CPS for Solicitation for School Quality Standards and Review Services, in which SOLMON responded "Yes.  No doubt.  [Relative A and Relative B] need a college fund...." to BYRD-BENNETT's question, "We are applying yes?";

In violation of Title 18, United States Code, Sections 1343 and 1346.

## COUNT FOUR

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.      Paragraphs One through Twenty-One of Count One are incorporated here.

2.      On or about September 13, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

BARBARA BYRD-BENNETT and
GARY SOLOMON,
THOMAS VRANAS,
THE SUPES ACADEMY, LLC, and
SYNESI ASSOCIATES, LLC,

defendants, herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce, certain signs, signals and sounds, namely, an email from BYRD-BENNETT to CPS employees, with a copy sent to SOLOMON and VRANAS, that stated, in part and with regard to THE SUPES ACADEMY, "I receive no financial benefit from their continued work with CPS and they were assured that they would not be prohibited from future work with CPS";

In violation of Title 18, United States Code, Sections 1343 and 1346.

<u>COUNT FIVE</u>

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.    Paragraphs One through Twenty-One of Count One are incorporated here.

2.    On or about November 13, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BARBARA BYRD-BENNETT,<br>
GARY SOLOMON,<br>
THOMAS VRANAS,<br>
THE SUPES ACADEMY, LLC, and<br>
SYNESI ASSOCIATES, LLC,

defendants, herein, for the purpose of executing the above-described scheme, knowingly caused to be sent and delivered by UPS, a commercial interstate carrier, and the U.S. Postal Service, an envelope addressed to THE SUPES ACADEMY, LLC's office, containing a check from the CBOE payable to THE SUPES ACADEMY, LLC, in the amount of $209,538, which funds represented a payment on the October 24, 2012 contract;

In violation of Title 18, United States Code, Sections 1341 and 1346.

18

## COUNT SIX

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.      Paragraphs One through Twenty-One of Count One are incorporated here.

2.      On or about December 6, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BARBARA BYRD-BENNETT,
GARY SOLOMON,
THOMAS VRANAS,
THE SUPES ACADEMY, LLC, and
SYNESI ASSOCIATES, LLC,

defendants, herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce certain signs, signals and sounds, namely, an email from SOLOMON to VRANAS containing an email discussion between BYRD-BENNETT, SOLOMON, and VRANAS in which SOLOMON informed BYRD-BENNETT, in part, "Like we have discussed, we have created accounts that, upon withdrawal, we will pay down the taxes and distribute. You can distribute to [Relative A and Relative B] as you deem appropriate. It is our assumption that the distribution will serve as a signing bonus upon your return to SUPES/Synesi. If you only join for the day, you will be the highest paid person on the planet for that day. Regardless, it will be paid out on day one."

In violation of Title 18, United States Code, Sections 1343 and 1346.

## COUNT SEVEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1. Paragraphs One through Twenty-One of Count One are incorporated here.

2. On or about December 14, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BARBARA BYRD-BENNETT,
GARY SOLOMON,
THOMAS VRANAS,
THE SUPES ACADEMY, LLC, and
SYNESI ASSOCIATES, LLC,

defendants, herein, for the purpose of executing the above-described scheme, knowingly caused to be sent and delivered by UPS, a commercial interstate carrier, and the U.S. Postal Service, an envelope addressed to THE SUPES ACADEMY, LLC's office, containing a check from the CBOE payable to THE SUPES ACADEMY, LLC, in the amount of $347,024.34, which funds represented payment on a portion of the October 24, 2012 contract;

In violation of Title 18, United States Code, Sections 1341 and 1346.

## COUNT EIGHT

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1. Paragraphs One through Twenty-One of Count One are incorporated here.

2. On or about February 5, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BARBARA BYRD-BENNETT,
GARY SOLOMON,
THOMAS VRANAS,
THE SUPES ACADEMY, LLC, and
SYNESI ASSOCIATES, LLC,

defendants, herein, for the purpose of executing the above-described scheme, knowingly caused to be sent and delivered by UPS, and the U.S. Postal Service, an envelope addressed to THE SUPES ACADEMY, LLC's office, containing a check from the CBOE payable to THE SUPES ACADEMY, LLC, in the amount of $77,407.82, which funds represented payment on a portion of the October 24, 2012 contract;

In violation of Title 18, United States Code, Sections 1341 and 1346.

## COUNT NINE

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Paragraphs One through Twenty-One of Count One are incorporated here.

2.     On or about March 1, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BARBARA BYRD-BENNETT,
GARY SOLOMON,
THOMAS VRANAS,
THE SUPES ACADEMY, LLC, and
SYNESI ASSOCIATES, LLC,

defendants, herein, for the purpose of executing the above-described scheme, knowingly caused to be sent and delivered by UPS, a commercial interstate carrier, and the U.S. Postal Service, an envelope addressed to THE SUPES ACADEMY, LLC's office, containing a check from the CBOE payable to THE SUPES ACADEMY, LLC, in the amount of $308,320.49, which funds represented payment on a portion of the October 24, 2012 contract;

In violation of Title 18, United States Code, Sections 1341 and 1346.

## COUNT TEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.      Paragraphs One through Twenty-One of Count One are incorporated here.

2.      On or about March 22, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BARBARA BYRD-BENNETT,
GARY SOLOMON,
THOMAS VRANAS,
THE SUPES ACADEMY, LLC, and
SYNESI ASSOCIATES, LLC,

defendants, herein, for the purpose of executing the above-described scheme, knowingly caused to be sent and delivered by UPS, a commercial interstate carrier, and the U.S. Postal Service, an envelope addressed to THE SUPES ACADEMY, LLC's office, containing a check from the CBOE payable to THE SUPES ACADEMY, LLC, in the amount of $287,576.58, which funds represented payment on a portion of the October 24, 2012 contract;

In violation of Title 18, United States Code, Sections 1341 and 1346.

## COUNT ELEVEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Paragraphs One through Twenty-One of Count One are incorporated here.

2.     On or about April 19, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BARBARA BYRD-BENNETT,
GARY SOLOMON,
THOMAS VRANAS,
THE SUPES ACADEMY, LLC, and
SYNESI ASSOCIATES, LLC,

defendants, herein, for the purpose of executing the above-described scheme, knowingly caused to be sent and delivered by UPS, a commercial interstate carrier, and the U.S. Postal Service, an envelope addressed to THE SUPES ACADEMY, LLC's office, containing a check from the CBOE payable to THE SUPES ACADEMY, LLC, in the amount of $619,052.92, which funds represented payment on a portion of the October 24, 2012 contract;

In violation of Title 18, United States Code, Sections 1341 and 1346.

## COUNT TWELVE

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Paragraphs One through Twenty-One of Count One are incorporated here.

2.     On or about May 28, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BARBARA BYRD-BENNETT,
GARY SOLOMON,
THOMAS VRANAS,
THE SUPES ACADEMY, LLC, and
SYNESI ASSOCIATES, LLC,

defendants, herein, for the purpose of executing the above-described scheme, knowingly caused to be sent and delivered by UPS, a commercial interstate carrier, and the U.S. Postal Service, an envelope addressed to THE SUPES ACADEMY, LLC's office, containing a check from the CBOE payable to THE SUPES ACADEMY, LLC, in the amount of $326,280.50, which funds represented payment on a portion of the October 24, 2012 contract;

In violation of Title 18, United States Code, Sections 1341 and 1346.

## COUNT THIRTEEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.      Paragraphs One through Twenty-One of Count One are incorporated here.

2.      On or about July 29, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BARBARA BYRD-BENNETT,
GARY SOLOMON,
THOMAS VRANAS,
THE SUPES ACADEMY, LLC, and
SYNESI ASSOCIATES, LLC,

defendants, herein, for the purpose of executing the above-described scheme, knowingly caused to be sent and delivered by UPS, a commercial interstate carrier, and the U.S. Postal Service, an envelope addressed to THE SUPES ACADEMY, LLC's office, containing a check from the CBOE payable to THE SUPES ACADEMY, LLC, in the amount of $400,000, which funds represented payment on a portion of the June 26, 2013 contract;

In violation of Title 18, United States Code, Sections 1341 and 1346.

## COUNT FOURTEEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Paragraphs One through Twenty-One of Count One are incorporated here.

2.     On or about August 30, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BARBARA BYRD-BENNETT,
GARY SOLOMON,
THOMAS VRANAS,
THE SUPES ACADEMY, LLC, and
SYNESI ASSOCIATES, LLC,

defendants, herein, for the purpose of executing the above-described scheme, knowingly caused to be sent and delivered by UPS, a commercial interstate carrier, and the U.S. Postal Service, an envelope addressed to THE SUPES ACADEMY, LLC's office, containing a check from the CBOE payable to THE SUPES ACADEMY, LLC, in the amount of $1,002,497.87, which funds represented payment on a portion of the June 26, 2013 contract;

In violation of Title 18, United States Code, Sections 1341 and 1346.

<u>COUNT FIFTEEN</u>

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.      Paragraphs One through Twenty-One of Count One are incorporated here.

2.      On or about October 1, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BARBARA BYRD-BENNETT,
GARY SOLOMON,
THOMAS VRANAS,
THE SUPES ACADEMY, LLC, and
SYNESI ASSOCIATES, LLC,

defendants, herein, for the purpose of executing the above-described scheme, knowingly caused to be sent and delivered by UPS, a commercial interstate carrier, and the U.S. Postal Service, an envelope addressed to THE SUPES ACADEMY, LLC's office, containing a check from the CBOE payable to THE SUPES ACADEMY, LLC, in the amount of $571,156.49, which funds represented payment on a portion of the June 26, 2013 contract;

In violation of Title 18, United States Code, Sections 1341 and 1346.

## COUNT SIXTEEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Paragraphs One through Twenty-One of Count One are incorporated here.

2.     On or about November 1, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BARBARA BYRD-BENNETT,
GARY SOLOMON,
THOMAS VRANAS,
THE SUPES ACADEMY, LLC, and
SYNESI ASSOCIATES, LLC,

defendants, herein, for the purpose of executing the above-described scheme, knowingly caused to be sent and delivered by UPS, a commercial interstate carrier, and the U.S. Postal Service, an envelope addressed to THE SUPES ACADEMY, LLC's office, containing a check from the CBOE payable to THE SUPES ACADEMY, LLC, in the amount of $536,845, which funds represented payment on a portion of the June 26, 2013 contract;

In violation of Title 18, United States Code, Sections 1341 and 1346.

## COUNT SEVENTEEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.      Paragraphs One through Twenty-One of Count One are incorporated here.

2.      On or about December 3, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BARBARA BYRD-BENNETT,
GARY SOLOMON,
THOMAS VRANAS,
THE SUPES ACADEMY, LLC, and
SYNESI ASSOCIATES, LLC,

defendants, herein, for the purpose of executing the above-described scheme, knowingly caused to be sent and delivered by UPS, a commercial interstate carrier, and the U.S. Postal Service, an envelope addressed to THE SUPES ACADEMY, LLC's office, containing a check from the CBOE payable to THE SUPES ACADEMY, LLC, in the amount of $567,637.55, which funds represented payment on a portion of the June 26, 2013 contract;

In violation of Title 18, United States Code, Sections 1341 and 1346.

## COUNT EIGHTEEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.      Paragraphs One through Twenty-One of Count One are incorporated here.

2.      On or about January 3, 2014, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BARBARA BYRD-BENNETT,
GARY SOLOMON,
THOMAS VRANAS,
THE SUPES ACADEMY, LLC, and
SYNESI ASSOCIATES, LLC,

defendants, herein, for the purpose of executing the above-described scheme, knowingly caused to be sent and delivered by UPS, a commercial interstate carrier, and the U.S. Postal Service, an envelope addressed to THE SUPES ACADEMY, LLC's office, containing a check from the CBOE payable to THE SUPES ACADEMY, LLC, in the amount of $478,637.67, which funds represented payment on a portion of the June 26, 2013 contract;

In violation of Title 18, United States Code, Sections 1341 and 1346.

## COUNT NINETEEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Paragraphs One through Twenty-One of Count One are incorporated here.

2.     On or about January 31, 2014, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BARBARA BYRD-BENNETT,
GARY SOLOMON,
THOMAS VRANAS,
THE SUPES ACADEMY, LLC, and
SYNESI ASSOCIATES, LLC,

defendants, herein, for the purpose of executing the above-described scheme, knowingly caused to be sent and delivered by UPS, a commercial interstate carrier, and the U.S. Postal Service, an envelope addressed to THE SUPES ACADEMY, LLC's office, containing a check from the CBOE payable to THE SUPES ACADEMY, LLC, in the amount of $569,624.28, which funds represented payment on a portion of the June 26, 2013 contract;

In violation of Title 18, United States Code, Sections 1341 and 1346.

## COUNT TWENTY

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Paragraphs One through Twenty-One of Count One are incorporated here.

2.     On or about March 4, 2014, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BARBARA BYRD-BENNETT,
GARY SOLOMON,
THOMAS VRANAS,
THE SUPES ACADEMY, LLC, and
SYNESI ASSOCIATES, LLC,

defendants, herein, for the purpose of executing the above-described scheme, knowingly caused to be sent and delivered by UPS, a commercial interstate carrier, and the U.S. Postal Service, an envelope addressed to THE SUPES ACADEMY, LLC's office, containing a check from the CBOE payable to THE SUPES ACADEMY, LLC, in the amount of $379,624.35, which funds represented payment on a portion of the June 26, 2013 contract;

In violation of Title 18, United States Code, Sections 1341 and 1346.

<u>COUNT TWENTY-ONE</u>

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.      Paragraphs 1(a) – 1(f) and 1(l) – 1(p) of Count One are incorporated here.

2.      Beginning no later than in or about October 2012 and continuing through in or about April 2015, in the Northern District of Illinois, Eastern Division, and elsewhere,

GARY SOLOMON and
THOMAS VRANAS,

defendants herein, conspired with each other to corruptly give, offer, and agree to give anything of value, namely, payments into accounts and personal benefits, for the benefit of Barbara Byrd-Bennett, intending that Byrd-Bennett, an agent of CPS, a local government that received in excess of $10,000 in federal funding during each of the twelve-month calendar years from 2012 through 2015, be influenced and rewarded in connection with any business, transaction, and series of transactions of $5,000 or more of CPS, namely, the October 24, 2012 leadership development contract for $2.09 million, the January 23, 2013 settlement for $225,000 and contract extension of services for $225,000, and the June 26, 2013 leadership development contract for $20.5 million, in violation of Title 18, United States Code, Section 666(a)(2).

3.      It was part of the conspiracy that, in exchange for Byrd-Bennett's efforts, throughout her employment with CPS, to assist the SUPES Entities with obtaining contracts with CPS, defendants SOLOMON and VRANAS offered, agreed

34

to give, and provided Byrd-Bennett with personal financial benefits, including meals, an airplane ticket, and tickets to sporting events, and agreed to fund accounts for the benefit of Relative A and Relative B of Byrd-Bennett with payments consisting of a percentage of the gross revenues from contracts awarded to the SUPES Entities by CPS; to disguise the payments as a signing bonus upon her return to employment with the SUPES Entities; and to give Byrd-Bennett lucrative compensation as a consultant to the SUPES Entities upon the completion of her employment with CPS.

## OVERT ACTS

4.     In furtherance of the conspiracy and to effect its objects and purposes, defendants SOLOMON and VRANAS committed and caused to be committed the following overt acts, among others, within the Northern District of Illinois and elsewhere:

a.     In or about the spring of 2012, SOLOMON informed Byrd-Bennett that he would fund accounts for the benefit of Relative A and Relative B of Byrd-Bennett with payments owed to Byrd-Bennett for work already done by Byrd-Bennett prior to becoming a consultant for CPS in order to avoid the appearance of a conflict of interest in the SUPES Entities securing new contracts with CPS.

b.     On or about May 29, 2012, VRANAS signed Byrd-Bennett's Consulting Agreement and sent the executed signature page to Byrd-Bennett as an attachment to an email.

c.  On or about June 26, 2012, VRANAS sent Byrd-Bennett an email containing a proposal for three SUPES Academies for CPS, and stating, "We may want to start thinking about procurement issues that may arise for this work. We've had some other districts do a blanket 'come one come all type of RFP for any services, and have had some sole source RFPs. Just want to make sure that as this work progresses, we don't get hindered with procurement (which has been notoriously terrible at CPS.)[.]"  In response to Byrd-Bennett's subsequent inquiry as to the issues she could navigate now, VRANAS emailed that the options included a sole source contract and specific and general RFPs, but that the sole source would be the best option.

d.  On or about July 2, 2012, SOLOMON and Byrd-Bennett emailed regarding an RFP Solicitation for School Quality Standards and Review Services issued by CPS, with SOLOMON responding to Byrd-Bennett's inquiry whether The SUPES Academy was applying, "Yes.  No doubt.  [Relative A and Relative B] need a college fund...."

e.  On or about August 25, 2012, SOLOMON sent Byrd-Bennett an email that asked Byrd-Bennett to review the attached nine-page proposal from The SUPES Academy that detailed the services it intended to provide to CPS as an expansion of CELA at a total cost of $2,550,000.

f.  On or about September 10, 2012, SOLOMON and Byrd-Bennett emailed about developing a strategy on principal professional development in order to obtain money from Organization A, with Byrd-Bennett stating, "I have tuition. to

pay and casinos to visit (: [.]" SOLOMON responded that he was less worried about Organization A and its million as he was about CPS Employee A.

g.   On or about September 17, 2012, VRANAS sent an email to CPS Employee B, with a copy sent to SOLOMON and Byrd-Bennett, that compared the work proposed by The SUPES Academy with another professional development organization.   Byrd-Bennett responded that she had shared the email with Organization A during a meeting the previous day.

h.   On or about September 21, 2012, VRANAS sent an email that contained an invoice for $218,125 for "Initial Work for 2012-2013 Leadership Academies" to CPS Employee A, CPS Employee B, and Byrd-Bennett, with a copy sent to SOLMON.

i.   On or about September 22, 2012, VRANAS sent an email that contained a revised invoice for $450,000 for "Initial Work for 2012-2013 Leadership Academies" to CPS Employee A, CPS Employee B, and Byrd-Bennett, with a copy sent to SOLOMON.

j.   On or about September 25, 2012, SOLOMON asked Byrd-Bennett to contact Official A to ask for assistance in obtaining $450,000 in funding for CELA from Organization A for the expansion of CELA for the 2012-2013 school year.

k.   On or about November 20, 2012, VRANAS informed Byrd-Bennett that they were short $450,000 on funding via an email.   Byrd-Bennett responded, "I am on it."

l. On or about December 6, 2012, SOLOMON sent an email to Byrd-Bennett that related to an email that Byrd-Bennett sent to SOLOMON on December 2, 2012, that contained the personal identifying information for Relative A and Relative B, and that stated, "With the totals you shared, I would like for the accounts to be equal. I would like the flexibility to use funds for whatever reason as needed for them. . . .I know we calculated PG and St. Louis....what is it for Chicago, assuming we hit the full amount? And finally, this would be the same for Synesi when I make it happen, yes? Let me know and let me know when . . .how soon you can get the accounts set up." SOLOMON's December 6 email confirmed that they had created accounts that, upon withdrawal, they would pay taxes and distribute and that "[i]it is our assumption, that the distribution will serve as a signing bonus upon your return to SUPES/Synesi. If you only join for the day, you will be the highest paid person on the planet for that day. Regardless, it will be paid out on day one."

m. On or about December 6, 2012, SOLOMON forwarded his email correspondence with Byrd-Bennett regarding the accounts to VRANAS, stating, "You can call her any time you like." VRANAS informed SOLOMON in response, "I haven't been part of those discussions at all. I can if you want let me know. Everyone sucks and is greedy."

n. On December 6, 2012, SOLOMON sent an email to Byrd-Bennett stating, "Accounts are set up."

o.    On or about December 7, 2012, SOLOMON sent CPS Employee A an email, with a copy to Byrd-Bennett and VRANAS, regarding additional topics to include for CELA in order to request additional funds from the CBOE. In response, Byrd-Bennett stated that she was taking "this" over via another CPS employee.

p.    On or about December 12, 2012, SOLOMON sent Byrd-Bennett an email in which he agreed to pay the expenses for Byrd-Bennett's holiday party for CPS personnel.

q.    On or about January 21, 2013, SOLMON informed Byrd-Bennett via email that he would reimburse her the amount she paid for her holiday party.

r.    On or about January 25, 2013, SOLMON agreed to provide Byrd-Bennett with tickets to an NBA basketball game.

s.    In the late summer or early fall of 2013, SOLOMON informed Byrd-Bennett that the CBOE Inspector General wanted to review his and VRANAS' emails and that VRANAS was going to use a computer program or software to delete their emails and conveyed to Byrd-Bennett that she needed to delete her emails as well.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWENTY-TWO

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Paragraph One of Count Twenty-One is incorporated here.

2.     On various occasions in 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

GARY SOLOMON and
THOMAS VRANAS,

defendants herein, corruptly gave, offered, and agreed to give anything of value, namely, payments into accounts and personal benefits, for the benefit of Barbara Byrd-Bennett, intending that Byrd-Bennett, an agent of the CPS, a local government that received in excess of $10,000 in federal funding during calendar year 2012, be influenced and rewarded in connection with any business, transaction, and series of transactions of $5,000 or more of CPS, namely, leadership development contracts,

In violation of Title 18, United States Code, Section 666(a)(2).

## COUNT TWENTY-THREE

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Paragraph One of Count Twenty-One is incorporated here.

2.     On various occasions in 2013, in the Northern District of Illinois, Eastern Division, and elsewhere,

GARY SOLOMON and
THOMAS VRANAS,

defendants herein, corruptly gave, offered, and agreed to give anything of value, namely, payments into accounts and personal benefits, for the benefit of Barbara Byrd-Bennett, intending that Byrd-Bennett, an agent of the CPS, a local government that received in excess of $10,000 in federal funding during calendar year 2013, be influenced and rewarded in connection with any business, transaction, and series of transactions of $5,000 or more of CPS, namely, leadership development contracts,

In violation of Title 18, United States Code, Section 666(a)(2).

## FORFEITURE ALLEGATION

The SPECIAL SEPTEMBER 2015 GRAND JURY further alleges:

1.     The allegations in Counts One through Twenty-Three are incorporated here for the purpose of alleging that certain property is subject to forfeiture, pursuant to Tile 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.     As a result of their violations of Title 18, United States Code, Sections 371, 666, 1341, 1343, and 1346, as alleged in the foregoing Indictment,

> GARY SOLOMON,
> THOMAS VRANAS,
> THE SUPES ACADEMY, LLC, and
> SYNESI ASSOCIATES, LLC,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all right, title and interest they may have in property, real and personal, which constitutes and is derived from proceeds traceable to the charged offenses.

3.     The interests of the defendants subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) include, but are not limited to, all money and property that constituted and is traceable to the violations, estimated as including approximately $2 million.

4.     If any of the property subject to forfeiture and described above, as a result of any act or omission of the defendant:

> (a)     Cannot be located upon the exercise of due diligence;

42

(b)     Has been transferred or sold to, or deposited with, a third party;

(c)     Has been placed beyond the jurisdiction of the Court;

(d)     Has been substantially diminished in value; or

(e)     Has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property, under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

5.     All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).


A TRUE BILL:


_____

FOREPERSON




_____

UNITED STATES ATTORNEY

43